FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 06 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| N.B. INDUSTRIES, INC., a California corporation, individually and on behalf of all others similarly situated, <br><br>         Plaintiff - Appellant, <br><br>   v. <br><br> WELLS FARGO & COMPANY, a Delaware corporation; WELLS FARGO BANK, N.A., a national banking association; UNITED STATES PAN ASIAN AMERICAN CHAMBER OF COMMERCE, a District of Columbia nonprofit corporation; UNITED STATES PAN ASIAN AMERICAN CHAMBER OF COMMERCE EDUCATION FOUNDATION, a District of Columbia nonprofit corporation, <br><br>         Defendants - Appellees. | No. 10-17934 <br><br> D.C. No. 4:10-cv-03203-LB <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted December 5, 2011

---

       [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

San Francisco, California

Before: SCHROEDER, O'SCANNLAIN, and BERZON, Circuit Judges.


Plaintiff-Appellant N.B. Industries, Inc. ("N.B.") alleges that Defendant-Appellees Wells Fargo & Company, Wells Fargo N.A. (collectively, "Wells Fargo"), the United States Pan Asian American Chamber of Commerce, and the United States Pan Asian American Chamber of Commerce Education Foundation (collectively, "USPAACC") faxed N.B. unsolicited advertisements in violation of the Junk Fax Prevention Act ("JFPA"), 47 U.S.C. § 227. The district court dismissed with prejudice N.B.'s complaint for failure to state a claim. We affirm the dismissal.

1. We review de novo a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007). Because this is an appeal from an order granting Defendants' motion to dismiss, we rely upon all the factual allegations pleaded in the Plaintiff's complaint and assume them to be true. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

2. The faxes sent by Wells Fargo and USPAACC comprised almost entirely information about an Asian Business Leadership Award, an application for

the award, and encouragement to apply.  In addition, the faxes contained five mentions of the 2010 USPAACC CelebrAsian Business Opportunity Conference; were marked with six USPAACC or Wells Fargo logos; provided general (non-award specific) USPAACC or Wells Fargo contact information twice; and once invited recipients to "[v]isit" USPAACC and Wells Fargo's websites, sites that contained information advertising their services.

JFPA defines an unsolicited advertisement as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5).  To be commercially available within the meaning of JFPA, a good or service must be available to be bought or sold (or must be a pretext for advertising a product that is so available). *The American Heritage Dictionary* 175 (3d ed. 1994) (defining commerce as the "buying and selling of goods").

There is no indication – and N.B. does not allege – that the Asian Business Leadership Award is available for sale.  Nor is there any indication or allegation that the award itself is a pretext for advertising commercially available goods or services.  The Asian Business Leadership Award is thus not commercially available.

N.B. argues that the text relating to the award nevertheless violates JFPA because it "proposes a commercial transaction": "award consideration and the opportunity to receive award benefits in exchange for applicants' immediate transfer of media and privacy rights." N.B. is referring to the disclosure agreement included with the faxed application, which essentially provides that Wells Fargo and USPAACC may publicize the award winners. Requiring that applicants sign such an agreement as a condition for applying for an award does not make the award for sale. Indeed, publicity is presumably one of the benefits of the award to those who win. We hold that the award itself is not commercially available and, therefore, the description of the award, the application to apply for it, and the text encouraging recipients to apply are not unsolicited advertisements within the meaning of JFPA.

3. The faxes did, however, contain several incidental advertisements. To determine whether such incidental advertising transforms an otherwise legitimate fax into an illegal unsolicited advertisement, we must turn to the interpretation of JFPA promulgated by the Federal Communications Commission, the agency to which the Act explicitly delegates interpretive authority. 47 U.S.C. § 227(b)(2); *see also Chevron, U.S.A. v. NRDC, Inc.*, 467 U.S. 837, 845 (1984).

The faxes repeatedly mention that the Asian Business Leadership Award will be presented at the 25th Anniversary CelebrAsian Business Opportunity Conference. Conference attendees were charged a fee for their participation in exchange for the "chance to connect with serious buyers of Fortune Corporations and the Federal Government, to showcase [their] products and services, and to take part in this trillion dollar market at this one-of-a-kind conference." Participation in the conference was thus a commercially available service.

In addition, the faxes at issue contained several Wells Fargo and USPAACC logos and slogans, as well as general (non-award related) contact information for both organizations. The FCC Order interpreting JFPA indicates that company logos and business slogans are advertising, although, in many cases, so de minimis in comparison to the fax as a whole as not to render the entire fax an advertisement. *See* 71 Fed. Reg. at 25,973. The logos, slogans, and contact information included on the faxes at issue here could reasonably be construed as advertising the commercial availability of Wells Fargo and USPAACC's goods and services. In particular, a recipient of the faxes could reasonably infer from the references to Wells Fargo's Asian Business Services program that Wells Fargo sells services to Asian businesses.

Finally, the faxes direct recipients to "[v]isit uspaacc.com or wellsfargo.com/biz/asian." At the time, the website at uspaacc.com was almost entirely an advertisement for the CelebrAsian Conference. The Wells Fargo website, while briefly describing the award, was similarly almost entirely an advertisement for and description of Wells Fargo's Asian business services.

Applying the FCC standards, the CelebrAsian Business Conference, the inclusion of the logos, slogans, and non-award related contact information, and the direction to visit Wells Fargo and USPAACC's websites all constitute unsolicited advertisements. The FCC's guidance mentions two factors relevant to when incidental advertising transforms a legitimate fax into an unsolicited advertisement: (1) "whether the advertising is on behalf of the sender . . . , such as an announcement in a membership organization's monthly newsletter about an upcoming conference" or whether it "is sold to and transmitted on behalf of [other] entities"; and (2) "the amount of space devoted to advertising versus the amount of space used for information." 71 Fed. Reg. 25,967–01. The first factor clearly cuts in favor of Wells Fargo and USPAACC.

As to the second factor, there is little caselaw on what percentage of incidental advertising is too much. However, it is clear that the percentage in this case is very low. *C.f. Holmes v. Back Doctors, Ltd.*, 695 F. Supp. 2d 843, 851

(S.D. Ill. 2010) (holding that a fax, one-seventh of which comprised advertising, did not violate JFPA). We hold that the advertisements constituted such a small portion of the faxes as to be incidental to the award application. Such de minimis advertising is insufficient to transform faxes that were largely permissible into prohibited communications.

In sum, the faxes sent by Wells Fargo and USPAACC to N.B. were not, overall, advertisements within the meaning of JFPA. Therefore, faxing them without N.B.'s permission did not violate the Act.

**AFFIRMED.**